The next item on our calendar is Zaire Page versus Stuart Eckert. Good morning, Your Honors. Lorca Morello for Petitioner Appellant Zaire Page. In Illinois v. Allen, the Supreme Court created a very narrowly tailored exception to the fundamental right to be present, namely that a defendant may be removed from his trial when his conduct is so disruptive as to make it impossible or very difficult to proceed with him in the courtroom. In other words, that it must be directly connected to the disruptive effect of his presence. The court further held that even a defendant ejected for disruption may, of course, be readmitted, and these are the court's exact words, as soon as he is willing or promises to conduct himself properly. Mr. Page was ejected after a single brief verbal outburst and never permitted to return, despite assuring the court five times throughout the rest of the trial that he was ready to conduct himself properly. As a result, he was unwillingly absent for important prosecution testimony, summations, jury charge, answers to the jury notes, which were quite important in this case, and the rendering of the verdict. He wasn't even allowed to follow the proceedings from another room. Now, the state court held that Mr. Page had voluntarily and permanently waived his right to be present based on this single outburst, plus a so-called pattern of disruption, which refers to incidents having no connection to whether the trial could proceed with him in the courtroom. That was an unreasonable application of Allen. First, it extends its narrowly tailored definition of disruption, and second, it raises the threshold for readmittance to the court. Is it Morello or Moret? Morello. Yes, Morello, Judge. Ms. Morello, I mean, what are we to make of what happened after the trial, but his next court appearance, which was his sentencing, where he seemed to engage in comparably or even worse misconduct towards the court. Doesn't that sort of suggest that he wasn't really willing to behave himself or rehabilitate himself? Are we allowed to consider that? I would say not, Your Honor, because the basis for the exclusion is what the court had at the time and the situation at the time. The sentencing was, you know, first of all, after he had been excluded from his trial, it does not say anything about what he would have done if he had been readmitted when he promised to behave. None of his prior conduct, which consisted of being produced late, was disruptive within the meaning of Allen, and I submit it didn't even really show that he was trying to stop the trial. If you compare it to Allen itself, you know, who's saying Mr. Allen saying there's not going to be no trial. This is just, you know, improper, inappropriate to counsel. Are we bound here by the difficult standard, since this is an AEDPA case and it's on habeas rather than direct appeal? If you are on direct appeal, I would be very sympathetic to the fact that the district court didn't even let him watch on video. But now we're dealing with habeas, and we have the state court and we have the deference owed to the state court. Can you speak to that? Yes. First, assuming this is a trial error, even Brett B. Abramson says that if it's egregious enough, habeas may be granted. And I submit that this deprivation meets that standard of egregiousness. This is five, to be ejected after a single disruption, five promises, undeniably these critical stages of trial that he missed, I would submit that it is egregious. You won't find another case with this extreme deprivation based on a single outburst. Secondly, you know, alternatively, I would say that prejudice has been shown here. This was not an open and shut case. It was a very contentious jury deliberation. The evidence came solely from a purported accomplice who was impeached over and over on the witness stand. He himself had been indicted for this murder. He was offered four to 12. The defense was that he was fingering Mr. Page to protect someone else. In fact, this man had written a letter to that effect. I think Mr. Page's absence, you know, unexplained absence would have tipped the scale in the jury's mind because first, the last time they saw him was being taken away in handcuffs after this outburst. They never saw him again. What could they conclude besides that either he was so dangerous that he couldn't be readmitted or that he had just given up trying to defend himself because he was so guilty? There was, of course, a curative instruction. Could I ask if what if the trial judge had had let Mr. Page return and basically the same thing happened? He had another outburst, but but then promised that it wouldn't happen again. Would it have been OK after that to exclude him from the remainder of trial? It would have been a harder argument to make. And in fact, defense counsel said to the judge, one of his many applications to have him readmitted, you know, please let him come back. And if he does it again, that's it. And that's that's I guess the answer. So so where's the line? I guess the difficulty I'm having is, you know, there's various incidents and, you know, you can discount things that happen out of the courtroom or, you know, what his intention was and, you know, going to get his haircut instead of getting on the bus. But it seems hard for me to see where the line is between one disruption or two. And it certainly doesn't seem clearly established law under the standard of review. I would I would say it is clearly established under Allen that that he can be readmitted as soon as he is willing promises. Allen doesn't say how many times that has to happen, but certainly at least once. I mean, there's no way under Allen that you can be permanently ejected after a single disruption. I would just like to add quickly about this haircut, because that does seem to be the centerpiece of the state's argument. There was no record showing that he got a haircut instead of coming to court. There was simply a rumor that the court chose to believe when Mr. Page was produced. Defense counsel said he didn't care about the haircut. He just wasn't put on the on the first bus. That is totally plausible. Nobody at Rikers is asked which bus they want to take. And I will reserve my two minutes. Thank you. Thank you. We'll hear from the government. Stuart Eckert, New York State. Good morning, counsel. Good morning, Your Honor. Can everybody hear me? Yes. May it please the court. Assistant District Attorney Terrence Heller, on behalf of the respondents, appellees. The appellate division's rejection on the merits of defendants' claims that the trial court erred in removing him from the courtroom based on his conduct and not re-admitting him was not contrary to and did not involve an unreasonable application of clearly established federal law. Nor did it rely upon... Counsel, once he promised not to do another outburst, wasn't he entitled to an opportunity to come back to the courtroom? Or failing that, shouldn't he have been allowed to watch it on video? Your Honor, I will take that question in two parts. Firstly, the defendant did not apologize to the court, even though he had an opportunity to do so. The first time his attorney represented that he was sorry and he wanted to re-enter, he wasn't even at the courthouse yet because he delayed his production that day. Also, when he was brought back into the courtroom after he claimed that he wanted to testify, he could, at that point, have apologized and he chose not to... I'm sorry, I have a stammer. He chose not to do so. As for the trial court's refusal to allow him to watch the trial in a separate room, that would certainly have been one way to handle it. But Allen gives trial judges broad discretion in how they handle these things. And certainly, there's no Supreme Court precedent that requires that sort of remedy. A defendant is found to have waived his right to be in the courtroom. Are you saying that the trial judge should have let him watch on video? I'm saying that there were a lot of options available to the trial court, and while that would certainly have been an option, and it's an option that other judges have chosen in the past, there's no requirement of a trial judge to choose that course. Well, the only requirement is the Constitution. Yes, but Your Honor, there's no Supreme Court case that requires that. In terms of a state habeas, there would have to be a determination that the state court's determination violated Supreme Court precedent, and there just isn't that in this case. One of the facts here is that this all happened sort of late, right? I mean, it's basically the outburst is the day before the government or the state rests and the defense ultimately rests. Is that correct? Yes, Your Honor. The outburst happened at the end of the seventh day of trial. The eighth day was when he got the haircut, and he was not delivered to the courtroom until 1230 in the afternoon. The prosecution rested that day, and then on the ninth day is when the defendant claimed that he wanted to testify after the defense had already rested, and the trial court brought him up to By the time he was removed, all of the pretrial proceedings, all of voir dire, and every witness who testified to the defendant's participation in the crime, had already testified. And as the court knows, that was after the defendant had delayed his trial on the second day and also on the fifth day and was warned every time, as well as the pretrial warnings that if he continues to testify, he will be charged. If he continued to delay his trial, he could be found to have waived his right to be present and the trial would proceed in his absence. Mr. Howell, let me ask you the same question I asked Ms. Morello. Do you think it's fair for us to consider what happened at the sentencing in assessing the discretion exercised by the trial court before that in excluding him from the courtroom? Yes, Your Honor. The trial court has to determine whether the defendant is capable of consistently comporting himself with the respect and decorum that's required. And the other time he was brought into the courtroom after he was found to have waived his right to be present, he engaged in this flagrantly contemptuous outburst at the sentencing where he swore at the court in sexual terms. He swore at a court officer. So that, I argue, confirms the determinations that the trial court made based on both the defendant's explicit conduct and, as the court explained, his body language and his demeanor in the courtroom. So, you know, the trial court's determinations were all supported by the record. The defendant's counsel conceded that the defendant got a haircut that morning when the trial court first explained that they found that the defendant had waived his right to be there. The defense counsel said, I understand your ruling. And while the defendant later tried to explain that he thought that he could still get a haircut and arrive at court in time, the trial court was not obligated to accept his belated representation that he would behave and his apology at face value. And I'm almost out of time, so unless there are any other questions, I would rely on the brief. Thank you, counsel. Thank you. Ms. Morella-Page, you have two minutes for rebuttal. Yes, Your Honor. Just very briefly, the Supreme Court does make a requirement to readmit on the basis of a promise. There are no strings attached. This does not say it has some burden of proof or make some five-part... Does he have to apologize to get this right? He did not even apologize, but he did apologize, and I refer you to my brief, pages 20 through 27. It sets out verbatim what defense counsel said and what the judge answered. Those were five promises to behave. Being late is not, or being produced late, is not disruption under Allen. And just the last word about the haircut, it has to be shown that getting a haircut makes you late for trial, and there was no showing of that. There was no one who had spoken to him. There's no case. The state relies on Eubanks, where the court had spoken to the prison authorities, where the defendant had said the day before in open court, I'm not going to be here. There was no inquiry at all by this judge. Also, what he missed, he missed the testimony of the arresting officer, about half of it, and the entire testimony of the lead detective, who connected him to the crime through the phone, through the motivation, through, he described the interrogation of the man who testified against him. That was certainly a violation of his right to confront his accusers. Only a violation if he didn't waive. I mean, that's the issue, right? That's right. And he never waived it, a single disruption. But again, it's multiple late appearances with warnings from the court, followed by a very abusive disruption. And then the very next trial day, he doesn't show up until 1230. And it's reported because of a haircut. On those facts, I mean, doesn't Allen give trial courts discretion to deal with the circumstances before that? Yes, it does, Your Honor. It gives any kind of punishment or whatever, but it doesn't give the court discretion to use exclusion as punishment. There are many ways a judge can control his courtroom. This is, just in closing, I just want to say, you know, you can be Frankenstein, but you have the right to be present at your own trial. This is an extreme malfunction. A man sitting in the courtroom, courthouse, begging to be readmitted to his trial. If the evidence is so overwhelming, then let them convict him after a fair trial where he is present. And that's all we're asking. And that's what the Constitution requires. Thank you, Your Honor. Thank you. Thank you both. Thank you, Your Honor. Served decision on this matter. The next case.